| | | |
|---|---|---|
| CHRISTOPHER LEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OF LAW IN SUPPORT** |
| TOWN OF MOORESVILLE, NORTH | ) | **OF DEFENDANTS' MOTION TO** |
| CAROLINA; CHIEF RON | ) | **DISMISS PLAINTIFF'S COMPLAINT** |
| CAMPURCIANI, in his official and | ) | **Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(6)** |
| individual capacities, TRACEY JEROME, | ) | |
| in her official and individual capacities; | ) | |
| CHRIS CARNEY, in his individual | ) | |
| capacity, and CHRIS QUINN, in his | ) | |
| individual capacity, | | |
| | | |
| Defendants. | | |

NOW COME Defendants Town of Mooresville, Chief Ron Campurciani, Tracey Jerome, Chris Carney, and Chris Quinn (collectively, "Defendants"), by and through undersigned counsel, and pursuant to Local Rule 7.1, Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6), and file this Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint.

## STATEMENT OF THE CASE

Plaintiff filed a Complaint on March 4, 2026, and brings claims against Defendants as follows: (1) First Amendment Retaliation against all Defendants; (2) Fourteenth Amendment – Property Interest against all Defendants; (3) Fourteenth Amendment – Stigma Plus against all Defendants; (4) Municipal liability under *Monell* against the Town; (5) Civil Conspiracy under

42 U.S.C. § 1983 against all Defendants; and (6) Declaratory and Injunctive Relief. (D.E. 1). Defendants now timely move to dismiss Plaintiff's Complaint in its entirety.

## STATEMENT OF FACTS

### I.    Plaintiff's Employment with the Town and Allegations

Plaintiff was employed by the Town as Director of the IT department. (D.E. 1, ¶ 40). His responsibilities included administration, operation, security, and integrity of the Town's information-technology environment. (*Id.*). His duties also included supervising the IT department, controlling access to surveillance, coordination with records requests and other preservation obligations, and ensuring Town policies are adhered to with regard to electronic records. (*Id.*).

On October 10, 2024, Mayor Carney was depicted entering Town Hall after normal business hours. (*Id.* ¶ 62). Shortly after October 10, 2024, senior leadership within the Town became aware of the data documenting the Mayor's after-hours presence. (*Id.* ¶ 72). Plaintiff alleges Ms. Jerome, the Town Manager, Chief Campurciani, and legal were aware of the contents of the documented data. (*Id.* ¶ 73). Plaintiff alleges no investigation was opened into the October 10, 2024, after hours entry into Town Hall. (*Id.* ¶ 74). Plaintiff alleges the Town attempted to restrict information about the October 10, 2024, Town Hall entry and disallow access. (*Id.* ¶¶ 75-80).

### II.    Plaintiff's Involvement

Plaintiff became aware of the existing footage of the Mayor and that it was being treated as sensitive. (*Id.* ¶ 92). Plaintiff claims he became a liability to Defendants because he could control the footage and ensure it was preserved. (*Id.* ¶¶ 94-95). He alleges other Town employees were targeted for scrutiny and removed because of their knowledge of the contents of

the footage. (*Id.* ¶ 96). Plaintiff alleges he was subjected to escalating pressure to treat the footage as sensitive. (*Id.* ¶ 98). He alleges, "upon information and belief" that he was pressured to limit who could view the footage, to refrain from exports, and to treat the records as insulated even though he thought the records were subject to production. (*Id.* ¶ 99). Plaintiff further alleges "upon information and belief" that he was pressured to avoid creating or preserving a clear audit trail and to implement configurations making it difficult to retrieve the footage. (*Id.* ¶ 100). Plaintiff claims pressure was increasing on IT personnel to treat key records as non-producible or outside normal production channels, even though he thought they should be produced lawfully. (*Id.* ¶ 101).

Plaintiff claims he "refused to delete, alter, misclassify, conceal, suppress, restrict, or manipulate" any footage, access logs, or any other records related to the Mayor's Town Hall entry. (*Id.* ¶ 106). He alleges he insisted the footage be preserved and retained. (*Id.* ¶ 107). He alleges he communicated that suppressing or rendering records inaccessible would violate Town policy and that he would not participate in any efforts to do so. (*Id.* ¶ 108). Plaintiff alleges he engaged in protected activity when "he refused to participate in the suppression, concealment, misclassification, restriction of access to, or obstruction of municipal" evidence and instead insisted that the evidence "be preserved and handled consistent with Town policy and lawful process." (*Id.* ¶ 43).

### III. Alleged Retaliation

Plaintiff alleges Defendants isolated him, undermined his authority, and positioned him for removal in response to his alleged protected refusal and insistence of lawful handling of evidence. (*Id.* ¶ 111). He claims his authority over systems he administered were undermined and he was excluded from meetings and communications involving surveillance, access-control

systems, and evidence handling, for which he was formally responsible. (*Id.* ¶ 113). Plaintiff alleges he was also subjected to additional scrutiny. (*Id.* ¶¶ 114-15). Plaintiff claims his treatment mirrored treatment of other employees who had knowledge of politically sensitive evidence. (*Id.* ¶ 117).

At some point, the Town initiated a disciplinary and investigatory process against Plaintiff, which Plaintiff claims, upon information and belief, was designed to remove him from employment. (*Id.* ¶ 119). Plaintiff alleges he received a Notice of Proposed Termination from the Town which mischaracterized Plaintiff's lawful conduct as misconduct and indicated Plaintiff's conduct was portrayed as insubordination, although he alleges he was taking actions to preserve evidence consistent with Town policy. (*Id.* ¶ 120). Plaintiff claims the Town relied on vague and technical sounding characterizations to describe his wrongdoing. (*Id.* ¶ 121). Plaintiff alleges he was pressured and forced to resign because he refused to suppress, conceal, misclassify or restrict access to the records documenting the Mayor's after hours entry. (*Id.* ¶ 127). Plaintiff claims the temporal proximity between his protected conduct and discipline, lack of performance issues in the past establishes a direct causal connection between his alleged termination and alleged protected refusals. (*Id.* ¶ 132).

Plaintiff claims his treatment occurred "within an established and ongoing pattern within the Town." (*Id.* ¶ 137). Plaintiff cited to Jeff Noble, and Frank Falzone, as examples of other former employees who were allegedly subjected to termination in response to their alleged protected activities. (*Id.* ¶¶ 138-39). Plaintiff alleges the treatment of Falzone, Noble, and himself constitutes a custom and practice of treating electronically stored evidence as a political risk to be managed rather than a record to be preserved. (*Id.* ¶ 141).

**<u>STANDARD OF REVIEW</u>**

4906-2972-9705, v. 1

Subject matter jurisdiction is a threshold issue that relates to the court's power to hear a case and must be decided before a determination on the merits of the case. *Constantine v. Rectors & Visitors of George Mason Univ.,* 411 F.3d 474, 479-80 (4th Cir. 2005). Generally, a motion under Rule 12(b)(1) raises the question of "whether [the plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of [the] claim." *Holloway v. Pagan River Dockside Seafood, Inc.,* 669 F.3d 448,452 (4th Cir. 2012).

A motion made pursuant to Rule 12(b)(2) challenges a Complaint for lack of personal jurisdiction. Under Rule 12(b)(2), the Plaintiff must prove by a preponderance of the evidence that the Court can exercise personal jurisdiction. *See, e.g., Grayson v. Anderson,* 816 F.3d 262, 267 (4th Cir. 2016); *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993).

To survive a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, Plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). Further, a claim must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

The Court need not accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Doe v. U.S.*, 381 F. Supp. 3d 573, 590 (M.D.N.C. 2019) (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). While the Court accepts plausible factual allegations in the complaint as true and considers those facts in the light most favorable to a plaintiff in ruling on a motion to dismiss, a court "need not

5

accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F. 3d 175, 180 (4th Cir. 2000). A court cannot "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Veney v. Wyche*, 293 F. 3d 726, 730 (4th Cir. 2002) (citations and internal quotations omitted).

## LEGAL ARGUMENT

### I. Plaintiff's Duplicative Official Capacity Claims Should Be Dismissed.

When a governmental employee is sued in his or her official capacity, the Fourth Circuit has held the claim is against the governmental office the employee holds, rather than the particular individual occupying the office. *Brissett v. Paul*, 141 F.3d 1157 (4th Cir. 1998) (upholding dismissal of claims against defendants in their official capacities as Chiefs of Police, where local government that employed them was named as a party); *see also Armstrong v. City of Greensboro*, 190 F.Supp.3d 450, 463 (2016) ("[D]uplicative claims against an individual in his official capacity when the government entity is also sued may be dismissed."); *Kentucky v. Graham*, 473 U.S. 159, 165-167 (1985) (noting that official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent.").

All Plaintiff's claims against Chief Campurciani and Ms. Jerome in their official capacities are redundant, unnecessary, and should be dismissed with prejudice.

### II. Plaintiff's Individual Capacity Claims Against Mayor Carney, Chief Campurciani, and Chris Quinn Should Be Dismissed Because Plaintiff Fails to Meet the Pleading Requirements of Rule 8.

A proper pleading under the Federal Rules of Civil Procedure must contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Merely offering "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*,

4906-2972-9705, v. 1

550 U.S. 544, 555 (2007)). Nor are "naked assertions devoid of further factual enhancement" sufficient. *Id.*

Plaintiff fails to plead any facts sufficient to state any claim against Mayor Carney, Chief Campurciani, or Mr. Quinn as required by Rule 8 and the plausibility standards of *Iqbal* and *Twombly.* Throughout, Plaintiff makes conclusory statements without any factual enhancement, and spouts "unadorned, the defendant-unlawfully-harmed-me accusation[s]," which are insufficient to meet the Rule 8 standard. *Id.* Due to this failure, Defendants cannot identify what Plaintiff claims each Defendant allegedly did, or decipher why that Defendant's alleged conduct constitutes a violation of law. *See McClain v. Causey*, Case No. 1:20-cv-695, 2021 U.S. Dist. LEXIS 5529, at *14, 2021 (M.D.N.C. Jan. 12, 2021) ("A pleading that vaguely attributes discrete actions to Defendants rather than to a specific party deprives [the defendants] and the court of the opportunity of determining whether there are sufficient facts to make a claim against each Defendant plausible.").

Contained in Plaintiff's entire Complaint is one paragraph about Mr. Quinn. (D.E. 1 ¶ 49). Plaintiff alleges Mr. Quinn participated in general decision-making affecting contracting, possessed knowledge of politically sensitive matters affecting Town leadership, and that he ratified actions designed to protect employees including Plaintiff. (*Id.*). Plaintiff fails to allege any actual involvement by Mr. Quinn in the disciplinary process, investigation, or alleged termination. Plaintiff does not even allege having ever communicated with Mr. Quinn or Mr. Quinn having communicated with him.

Plaintiff similarly fails to allege any facts supporting personal involvement by Mayor Carney in the employment decisions serving as the basis of Plaintiff's Complaint. Mayor Carney's primary role in Plaintiff's Complaint is that of the person depicted in the politically sensitive data

Plaintiff alleges. Plaintiff alleges Mayor Carney "exercised substantial influence over municipal priorities" and used his influence to affect how the Town handled the data of his entry into Town Hall after hours. (*Id.* ¶ 47). Such claims read as speculation without supporting allegations of fact. Plaintiff's Complaint does not allege Mayor Carney recommended his termination, was in any way involved in the discipline process, or even possessed the legal authority to make decisions regarding his employment. Similarly, Plaintiff's Complaint contains no allegations of communication by or to Mayor Carney, no directive issued, no meeting attended, or any other factual allegation suggesting the Mayor's involvement. Plaintiff has merely identified the Mayor as an alleged bad actor and seeks to pursue liability without any supporting factual allegation, which is impermissible.

Chief Campurciani is the Chief of Police for the Town and there is no allegation Plaintiff ever worked in the police department or worked under Chief Campurciani. (D.E. ¶ 48). Plaintiff alleges in a conclusory manner that Chief Campurciani personally participated in and/or ratified decisions to minimize the Mayor's after-hours Town Hall incident, but fails to allege how Chief Campurciani took any action impacting Plaintiff or Plaintiff's rights. (*Id.*). Chief Campurciani's involvement in this claim is limited to allegations that he was aware of the footage of the Town Hall entry, reviewed and assessed and discussed the electronic records depicting the after-hours Town Hall entry. (D.E. 1 ¶ 11, 73). Plaintiff fails to allege any action by Chief Campurciani impacting any of his rights or even involvement with him personally.

III. **Plaintiff's First Amendment Retaliation Claim Fails.**

To state a First Amendment retaliation claim under 42 U.S.C. § 1983, a public employee must plausibly allege that:

(1)     they spoke as a citizen about a public concern and not a personal interest;

4906-2972-9705, v. 1

(2)     they had an interest in speaking out that outweighed the government's interest in providing public services; and

(3)     their speech was a substantial factor in the adverse employment action.

*Penley v. McDowell Cnty. Bd. of Educ.,* 876 F.3d 646, 654 (4th Cir. 2017) (quoting *McVey v. Stacy*, 157 F.3d 271, 277–78 (4th Cir. 1998)).

### a)  Plaintiff did not Engage in Protected Speech

The Supreme Court has held the "the First Amendment does not protect statements that public employees make 'pursuant to their official duties.'" *Crouse v. Town of Moncks Corner*, 848 F.3d 576, 587 (4th Cir. 2017), citing *Garcetti v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006).  "The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 134 S. Ct. 2369, 2379, 189 L. Ed. 2d 312 (2014).  The relevant inquiry concerns the employee's actual, ordinary job duties, *Andrew v. Clark*, 561 F.3d 261, 267 (4th Cir. 2009), to "discern whether the speech at issue occurred in the normal course of those ordinary duties." *Hunter v. Town of Mocksville*, 789 F.3d 389, 397 (4th Cir. 2015) (quoting *Garcetti*, 547 U.S. at 422).  "The First Amendment does not protect speech made pursuant to a government employee's official duties, even when that speech is upon a matter of public concern." *Crouse v. Town of Moncks Corner*, 848 F.3d 576, 584 (4th Cir. 2017).  "Government employees do not have a constitutional "right to perform their jobs however they see fit." *Id.* (citing *Garcetti*, 547 U.S. at 421, 126 S.Ct. 1951).

Here, Plaintiff pleads that his duties made him "responsible for the administration, operation, security, and integrity of the Town's information-technology environment, including municipal networks, enterprise servers, data-retention architecture, access-control and credentialing systems, electronic audit logs, cybersecurity controls, and the Town's closed-circuit

4906-2972-9705, v. 1

television ("CCTV") surveillance infrastructure." (D.E. 1 ¶ 40). Plaintiff further alleges his duties included "ensuring that municipal electronic records were preserved, secured, auditable, accessible, and handled in compliance with Town policy and lawful process." (*Id.* ¶ 41). He alleges he "engaged in protected activity when he refused to participate in the suppression, concealment, misclassification, manipulation, restriction of access to, or obstruction of municipal electronic records and evidence, and instead insisted that politically sensitive digital evidence be preserved and handled consistent with Town policy and lawful process." (*Id.* ¶ 43).

Per Plaintiff's own admission, adhering to Town policy, ensuring evidence is preserved, and administering the access of electronic records consistent with Town practices is exactly what he was required to do as part of his employment. Plaintiff's insistence that Town Policy be followed and that records be preserved in conformity with applicable policy and law is exactly the type of conduct that falls "ordinarily within the scope of [his] duties." *Garcetti,* 547 U.S. at 424. In other words, according to Plaintiff's own allegations, he had an affirmative duty to insist that evidence is handled in accordance with Town policy and his alleged insistence on doing so does not constitute protected First Amendment speech.

Plaintiff's Complaint is devoid of any allegation that the Town or any Town personnel ever instructed him to suppress, conceal, misclassify, manipulate, or restrict access to municipal records and evidence. Plaintiff clearly alleges he refused to participate in such conduct, but Defendants are unclear how refusal to participate in conduct one was never asked to participate in could constitute protected speech or even a "refusal." Plaintiff has also failed to allege specific instances in which he "refused" to participate in the conduct identified. He has offered no fact specific instance, no specific communication, no date or time when these refusals occurred, or even that the Town was aware of any of these alleged refusals. It is unclear if Plaintiff's alleged "refusals"

4906-2972-9705, v. 1

were verbal, or if he just made an internal decision not to engage in some sort of conduct.  Plaintiff is not entitled to protections under the First Amendment for not engaging in activity he was never asked to engage in.

Finally, Plaintiff's failure to allege specific speech is fatal to his First Amendment Retaliation claim.  "Although 'speech' does not have to be spoken to be protected under the first amendment" "the Supreme Court has repeatedly rejected 'the view that an apparently limitless variety of conduct can be labeled speech whenever the person engaging in the conduct intends thereby to express an idea.'" *Dennison v County of Frederick, Va.*, 921 F.2d 50, 53-54 (4th Cir. 1990) (quoting *United States v. O'Brien*, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968)).  To prevail on a claim that an employee was discharged in retaliation for First Amendment speech, the employee must identify the constitutionally protected speech that caused the discharge.  *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983).  In *Dennison*, the Plaintiff relied on general allegations that he was being punished for a general course of conduct without identifying specific speech he engaged in. *Dennison*, 921 F.2d at 53.  The Court in *Dennison* held that Plaintiff's right to free speech could not have been violated "[s]ince [Plaintiff] cannot identify any particular speech, symbolic or otherwise, for which he was punished…" *Id.* 921 F.2d at 54.

Plaintiff's allegations that he generally refused to engage in conduct he was never asked to engage in constitutes the same kind of "general course of conduct" *Dennison* determined does not qualify for protection.

**b) Plaintiff has Failed to Plead an Adverse Employment Action.**

A municipal employer engages in unconstitutional retaliation under the First Amendment when "it discharges or 'refuses to rehire [the] employee,' or when it makes decisions relating to "promotion, transfer, recall, and hiring based on the exercise of' that employee's free speech

rights." *Ridpath v. Bd. of Governors Marshall Univ*. 447 F.3d 292, 316 (4th Cir. 2006) (quoting *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000)).

Plaintiff has not alleged termination, a refusal to hire, or decisions related to promotion, hiring, or transfer. Instead, Plaintiff has alleged and argued the adverse employment actions engaged in consist of an investigation, "discipline", and advising him of a notice of termination. (D.E. 1 ¶ 159). These alleged acts do not qualify as adverse employment actions as defined in *Ridpath* and *Suarez*. Plaintiff also seems to rely upon the wholly conclusory allegation that he was subjected to scrutiny, removal of authority, and isolation. Such allegations are unsupported by any allegation of fact.

### c) Plaintiff Fails to Plausibly Allege Causation.

"The causation requirement is 'rigorous' in that the protected expression must have been the 'but for' cause of the adverse employment action alleged." *Ridpath*, 447 F.3d at 318 (citing *Huang v. Bd. of Governors*, 902 F.2d 1134, 1140 (4th Cir. 1990)). While the law prohibits government officials from engaging in retaliatory acts in response to speech in fear of a chilling effect, "not every reaction made in response to an individual's exercise of his First Amendment right to free speech is actionable retaliation." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000) (*quoting DiMeglio v. Haines,* 45 F.3d 790, 806 (4th Cir. 1995). With respect to showing the retaliatory action adversely affected constitutionally protected speech, Plaintiff must show the conduct would deter a person of ordinary firmness from the exercise of First Amendment rights. *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005).

Plaintiff pleads in conclusory fashion that he was retaliated against in response to his protected speech. It is difficult to analyze such a claim because Plaintiff fails to allege when he undertook protected speech, in what manner he engaged in protected speech and when any alleged

retaliatory conduct occurred. The only allegations of actions against Plaintiff are the institution of an investigation and a Notice of Proposed Termination. (D.E. 1 ¶ 120).

Where an employer undertakes administrative action based on intervening concerns about employee conduct, even if the employee disputes those concerns, a retaliation claim cannot rest on speculation that the real motive was protected speech. *See Huang*, 902 F.2d at 1140 (rejecting causation where allegations showed other legitimate, non-speech-based reasons for employer action). This case therefore stands in stark contrast to *Ridpath*, where the plaintiff alleged direct evidence that his termination was imposed *because of* his speech. *See Ridpath*, 447 F.3d at 318–19 (Plaintiff alleged there was testimony that the plaintiff was terminated due to his speech and that he was subsequently terminated for said speech). Plaintiff here alleges no direct or circumstantial facts plausibly linking any Defendant's actions to retaliatory animus or showing that his speech was the determinative cause of the challenged conduct.

Plaintiff relies heavily on "temporal proximity" to establish causation between his alleged protected conduct and disciplinary action. (D.E. 1 ¶ 132, 16). However, Plaintiff has not pled when any of the alleged actions occurred so it is impossible to determine what role temporal proximity plays. "Where a plaintiff rests his case on temporal proximity alone, the temporal proximity must be very close." *Porter*, 72 F.4th at 583 (quoting *Penley v. McDowell Cnty., Bd. of Educ.*, 876 F.3d 646, 656 (4th Cir. 2017)); *See Pascual v. Lowes Home Centers, Inc.*, 193 Fed. Appx. 229, 233 (4th Cir. 2006) (unpublished) (where three to four months between the termination and claimed protected activity was too long to establish a causal connection by temporal proximity alone).

## IV. Plaintiff's Fourteenth Amendment Property Interest Claim Fails.

"The procedural safeguards of the due process clause extend to plaintiff's continued employment only if [he] had a property interest in that employment." *Pittman v. Wilson*

*County,* 839 F.2d 225, 226 (4th Cir. 1988). "[I]n order to possess a property interest in one's employment ... 'a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" *Pittman,* 839 F.2d at 227 (quoting *Bd. of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548(1972)). "Under North Carolina law, subject to a few well-defined exceptions, absent some form of contractual agreement between an employer and employee establishing a definite period of employment, the employment is presumed to be an 'at-will' employment, terminable at the will of either party, irrespective of the quality of performance by the other party." *Pittman,* 839 F.2d at 227.

North Carolina is an employment-at-will state. *Kurtzman v. Applied Analytical Industries, Inc.,* 347 N.C. 329, 331, 493 S.E.2d 420, 422 (1997). The relationship between an employee and his employer is presumed to be terminable at will unless there is a contractual agreement establishing a definite term of employment. *Soles v. City of Raleigh Civil Service Comm.,* 345 N.C. 443, 480 S.E.2d 685, *rehearing denied,* 345 N.C. 761, 485 S.E.2d 299 (1997). "Further, one whose contract for employment is terminable at will has no property interest in the employment which may form the basis for a denial of due process claim." *Buchanan v. Hight,* 133 N.C.App. 299, 303, 515 S.E.2d 225, 228 (Ct.App. 1999) (citing *Peele v. Provident Mut. Life Ins. Co.,* 90 N.C.App. 447, 451, 368 S.E.2d 892, 894-95, *disc. Review denied,* 323 N.C. 366, 373 S.E.2d 547 (1988).

Plaintiff's Complaint contains no allegation that there was a contractual agreement establishing a definite term of employment. Therefore, Plaintiff must be deemed terminable at will, in which case, he has no property interest in his employment and cannot proceed with a due process claim.

**V.     Plaintiff's Fourteenth Amendment Stigma-Plus Claim Fails.**

To establish a protected liberty interest and proceed on his Fourteenth Amendment claim, Plaintiff must plead facts sufficient to show the charges against him "(1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false." *Sciolino v. City of Newport News, Va.*, 480 F.3d 642, 646 (4th Cir. 2007). A protected liberty interest exists only if the plaintiff pleads facts satisfying all four elements of the *Sciolino* test; absent such a showing, no right to a name-clearing hearing arises under the Due Process Clause. *Harrell v. City of Gastonia*, 392 F. App'x 197, 203 (4th Cir. 2010).

The Due Process Clause "is not a guarantee against incorrect or ill-advised personnel decisions". *Sciolino,* 480 F.3d at 649 (quoting *Bishop v. Wood,* 426 U.S. 341, 350, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976)). Rather, "due process requires simply the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Harrell*, 392 F. App'x at 203 (citing *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

Plaintiff's Due Process claim fails because the Complaint contains no allegation that any Defendant <u>publicly</u> accused him of allegedly stigmatizing conduct.[1] In *Sciolino*, the Fourth Circuit held "that a *purely private* communication of the reasons for an employee's termination cannot form the basis for a due process claim, because there is no possibility of the allegation affecting the individual's Fourteenth Amendment liberty interests." *Sciolino*, 480 F.3d at 647 (emphasis in original) (relying on *Bishop v. Wood* 426 U.S. 341, 348, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976)).

Plaintiff claims allegedly stigmatizing information were made to "Town officials and departments beyond legitimate need-to-know and by placing, causing to be placed, or maintaining

---

[1] Plaintiff fails to allege specific action by any individual Defendant regarding his Fourteenth Amendment rights.

4906-2972-9705, v. 1

such accusations in Plaintiff's personnel records, disciplinary records, investigative materials, termination documentation, and/or separation records maintained by the Town." (D.E. 1 ¶ 195). This is insufficient to constitute publication under the Fourteenth Amendment framework. *See Elhady v. Kable*, 993 F.3d 208, 225 (4th Cir. 2021) ("intragovernmental dissemination of [] information to other federal agencies and components, to be used for federal law enforcement purposes, is not 'public disclosure' for purposes of a stigma-plus claim."; *Smith v. Wright*, No. 2:19cv559, 2021 WL 11474540, at *6 (E.D.Va. 2021) (forwarding stigmatizing memorandum to the City's Human Resources Director fails to sufficiently allege publication); *Willis v. City of Virginia Beach*, 90 F.Supp.3d 597, 617 (E.D.Va. 2015) (allegations of internal communications, private conversations, and meetings not attended by the public did not sufficiently plead publication for a Due Process claim).

Under North Carolina law, only limited categories of basic employment information maintained by a municipality constitute public records. *See* N.C. Gen. Stat. § 160A-168(b). Those categories are confined to information such as an employee's name, age, salary, date and type of employment action, and, in limited circumstances, the fact of a dismissal. *Id.* All other personnel information – including internal investigative materials, interview summaries, and disciplinary evaluations – is confidential and expressly excluded from public inspection. N.C. Gen. Stat. § 160A-168(c). North Carolina courts have consistently held that internal investigation files and reports maintained in or associated with a public employee's personnel file are not public records and are shielded from disclosure. *See Release of Silk Plant Forest Citizen Review Comm.'s Report & Appendices v. Barker*, 216 N.C. App. 268, 272 (2011) (the natural meaning of the statute indicates "a clear intent to maintain the privacy of a city employee's personnel file except under limited circumstances where examination of only the relevant portion of the file is allowed.").

4906-2972-9705, v. 1

Plaintiff also cannot satisfy the required element that the statements purportedly placing a "stigma" on his reputation were made in conjunction with his termination or demotion. *Sciolino*, 480 F.3d at 646. Plaintiff alleges his resignation/retirement from the Town was "forced." (D.E. 1 ¶¶ 24, 28, 127). Plaintiff's decision to retire rather than face possible termination "'effectively dispose[s] of any liberty interest claim he might assert.'" *Harrell*, 392 F. App'x at 203 (citing *Stone v. Univ. of Md. Med. Sys. Corp.,* 855 F.2d 167, 172–74 n. 5 (4th Cir. 1988)) (noting resignation can be voluntary "even where the only alternative to resignation is facing possible termination for cause, unless the employer actually lacked good cause to believe that grounds for termination existed").

## VI. Individual Defendants are Entitled to Qualified Immunity as to Plaintiff's Constitutional Claims.

Even if Defendants had violated Plaintiff's constitutional rights, which they did not, Plaintiff's claims are barred by qualified immunity. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Officials who are sued for civil damages are entitled to qualified immunity unless (1) the Complaint sufficiently alleges a violation of a constitutional right, and (2) the right at issue, defined at the appropriate level of generality, was "clearly established" at the time of the alleged misconduct. *Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs.*, 597 F.3d 163, 169 (4th Cir. 2010). Notably, the right at issue must be defined with specificity. *City of Escondido, Cal v. Emmons,* ---U.S.----, 139 S.Ct. 500, 503, 202 L.Ed.2d 455 (2019).

Qualified immunity "gives ample room for mistaken judgments" and protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341,

4906-2972-9705, v. 1

343, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

In the First Amendment retaliation context, Defendants are unaware of any Fourth Circuit case where our courts have ruled that a public employee has a constitutional right to be free from termination following insistence that he perform his job in conformity with municipal policies especially where the speech is internal. Similarly, Defendants are unaware of any Fourth Circuit case where courts have held that an employee's opinion about what evidence is or is not public record gives rise to protected speech.

As it pertains to the Fourteenth Amendment, Defendants are unaware of any controlling precedent that provides a public employee with a clearly defined constitutional right to a name-clearing hearing where alleged stigmatizing accusations arise during internal investigative proceedings, are not publicly disseminated, and the plaintiff alleges constructive discharge or forced separation rather than formal termination. Fourth Circuit precedent makes clear that private or internal accusations—even if false—do not give rise to a protected liberty interest absent public dissemination, and that due process is not triggered by internal personnel investigations or disputed employment decisions. *See, e.g., Sciolino*, 480 F.3d at 646–47; *Harrell*, 392 F. App'x at 203.

## VII.    Plaintiff has Failed to State a Claim for Relief Under *Monell*.

A municipality may not be held liable under § 1983 on a theory of respondeat superior. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Instead, municipal liability attaches only where a plaintiff plausibly alleges that an official municipal policy or custom was the "moving force" behind a constitutional violation. *Id.*; *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999). A municipal policy may arise: "(1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority;" or "(3)

4906-2972-9705, v. 1

through an omission, such as a failure to properly train officers, that manifest[s] deliberate indifference to the rights of citizens[.]" *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (internal citation omitted).

   **a) Plaintiff Fails to Plausibly Allege a Widespread and Persistent Custom, Practice, or Policy.**

To establish a municipal custom, Plaintiff must allege a practice that is "persistent and widespread" and "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S. at 691. Isolated incidents, or misconduct arising from a single internal employment dispute, are categorically insufficient. *Lytle*, 326 F.3d at 474; *Carter*, 164 F.3d at 220. "[P]roof of a single incident of the unconstitutional activity charged is not sufficient to prove the existence of a municipal custom." *Semple v. City of Moundsville*, 195 F.3d 708, 713–14 (4th Cir. 1999) (citation omitted); *see also Howard v. City of Durham*, 68 F.4th 934, 954 (4th Cir. 2023) ("[b]ut fatally to his claim, Howard offers evidence of only a single incident of unconstitutional activity: the incident in this very case. And 'proof of a single incident of the unconstitutional activity charged is not sufficient to prove the existence of a municipal custom'") (citing *Semple*, 195 F.3d at 713–14). Rather, there must be "numerous particular instances of unconstitutional conduct to establish a custom or practice." *Misjuns v. City of Lynchburg*, 139 F.4th 378, 386 (4th Cir. 2025) ("[t]he only facts that Misjuns alleged are regarding his own termination, and a custom cannot be established by proof alone of the single violation charged.... Misjuns has alleged none other than his own experience.").

In addition, *Monell* requires Plaintiff to allege facts sufficient to show (1) the Town had "'actual or constructive knowledge' of the custom and usage by its responsible policymakers,' and (2) there must be a failure by those policymakers, 'as a matter of specific intent or deliberate

indifference,' to correct or terminate the improper custom and usage." *Randall v. Prince George's Cnty., Md.,* 302 F.3d 188, 210 (4th Cir. 2002) (quoting *Spell,* 824 F.2d at 1391).

Despite Plaintiff's numerous allegations of Town custom, practice, and policy, all such allegations center around the same incident; the video depicting the Mayor in Town Hall. Plaintiff cannot claim the existence of a custom, practice, or policy by simply stating all of the allegations pertaining to his claim constitute a custom, practice or policy. *See Johnson v. Baltimore City, Maryland*, 163 F.4th 808, 823-24 (4th Cir. 2026) (Court found that allegations were insufficient where Plaintiff alleged "a custom of discrimination" and "an institutional practice or custom … to cover up officer misconduct, discrimination and retaliation against fellow officers who stand up against [] for violations of their civil rights."). Plaintiff attempts to invoke complaints filed by other Plaintiffs to establish a custom or practice of retaliation. (D.E. 1 ¶ 204).[2] Still, those claims all arise out of the same incident and same set of facts, thus failing to meet the requirements under *Monell*. *See Rhoads v. Guilford County, North Carolina*, 751 F.Supp.3d 590, 602 (M.D.N.C. 2024) (claims by two separate families that "repeated" violations "were part of a pattern and practice that was widespread and persistent…" was insufficient to establish the existence of a custom, practice, or policy).

**b) Plaintiff Does not Plausibly Allege Policymaker Ratification.**

As a threshold matter, Plaintiff fails to plausibly allege any individual possessed final policymaking authority under North Carolina law with respect to the personnel actions at issue— a question determined by state law, not by Plaintiff's characterization. *See Riddick v. Sch. Bd.*, 238 F.3d 518, 523 (4th Cir. 2000); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988). Plaintiff

---

[2] Jeffrey Noble and Frank Falzone filed substantively identical complaints and are represented by the same attorneys as Plaintiff. A party should not be allowed to simply separate their complaint into three separate claims in an effort to manufacture a *Monell* claim.

4906-2972-9705, v. 1

offers only conclusions rather than facts. For a decision to constitute municipal policy, the official must possess final policymaking authority with respect to the challenged action and must have made a deliberate choice among alternatives such that the decision itself may fairly be said to represent official policy. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84 (1986); *Lorbacher v. Housing Auth.*, 127 N.C. App. 663, 670 (1997); *see also Lambert v. Town of Sylva*, 259 N.C. App. 294, 304, 816 S.E.2d 187 (2018) (municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered).

Courts may never "assum[e] that municipal policymaking authority lies somewhere other than where the applicable law purports to put it." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988). Pursuant to N.C.G.S. § 160A-164:

> The council may adopt or provide for rules and regulations or ordinances concerning but not limited to annual leave, sick leave, special leave with full pay or with partial pay supplementing workers' compensation payments for employees injured in accidents arising out of and in the course of employment, hours of employment, holidays, working conditions, service award and incentive award programs, *other personnel policies*, and any other measures that promote the hiring and retention of capable, diligent, and honest career employees.

(emphasis added). In determining whether a municipality can be liable for constitutional violations of its decisionmakers, the question is whether "the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Liverman v. City of Petersburg*, 844 F.3d 400, 413 (4th Cir. 2016).

The power to adopt for rules and regulations concerning personnel matters, which is the matter that forms the basis of Plaintiff's *Monell* claim, is traditionally reserved for Town Council, and Plaintiff has failed to sufficiently plead it lies elsewhere. *See Pembaur*, 475 U.S. at 483 n. 12, (the majority explained that if municipal employment policy was set by the Board, only that body's decisions would provide a basis for municipal liability, even if an individual possessed the

discretion to hire and fire employees). Plaintiff has failed to plead the power to adopt rules and regulations concerning personnel matters lie with the Town Manager or Police Chief/Assistant Town Manager rather than the Town Council. Plaintiff's allegation that Defendants Jerome and Campurciani had final policy making authority "does not make it so." *Misjuns*, 139 F.4th at 385.

### c) Plaintiff Does not Plausibly Plead Failure to Train.

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61, 179 L. Ed. 2d 417 (2011) (citing *Oklahoma City v. Tuttle,* 471 U.S. 808, 822–823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell* ")). A viable failure-to-train claim requires factual allegations showing: (1) a specific deficiency in training; (2) deliberate indifference by the municipality, typically demonstrated by a pattern of similar constitutional violations; and (3) a causal link between the training deficiency and the constitutional injury. *Connick*, 563 U.S. at 61–62. A Town can only be liable under §1983 for inadequate training where the failure to train amounts to deliberate indifference to the rights of persons who the municipal employee(s) come into contact with. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.ed.2d 412 (1989). Further, the alleged training deficiency "must be closely related to the ultimate injury," meaning it must cause the injury. *Id.* at 391, 109 S.Ct. 1197.

Moreover, "[a]t its core, the strict *Monell* test asks for some level of notice." *Estate of Jones by Jones v. City of Martinsburg, West Virginia*, 961 F.3d 661, 672 (4th Cir. 2020). There can be no liability found under *Monell* because there is no deficiency in training to "reflect a deliberate or conscious choice by a municipality …" *Doe v. Broderick*, 225 F.3d 440, 456 (4th Cir. 2000).

Plaintiff's Complaint fails to plead anything more than conclusory allegations that the Town was deliberately indifferent in failing to train in areas that resulted in Plaintiff's alleged

constitutional violation. Plaintiff does not meet the pleading standard where he just alleges formulaic elements of the cause of action he seeks to pursue. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987) (requiring "a specific deficiency rather than general laxness or ineffectiveness in training be shown."). Importantly, Plaintiff also fails to plead any facts to show the Town was on notice of the alleged deficient training.

## VIII. Plaintiff's Civil Conspiracy Claim is Barred by the Intracorporate Conspiracy Doctrine.

Plaintiff's civil conspiracy claim must fail since he has failed to plead a claim under § 1983, as noted above. There must be an underlying Constitutional deprivation to prevail on a conspiracy claim under § 1983. *See Nance v. City of Albemarle, North Carolina*, 520 F.Supp. 3d 758, 801 (M.D.N.C. 2021) (dismissing § 1983 civil conspiracy claim where plaintiffs "failed to plausibly allege" constitutional deprivations); *Byrd v. Hopson*, 265 F.Supp. 2d 594, 599 (W.D.N.C. 2003) (Under North Carolina law, "there is no independent cause of action for civil conspiracy; the claim can arise only where there is an underlying claim for unlawful conduct.").

To plead a cognizable civil conspiracy claim under § 1983, Plaintiff "must present evidence that [Defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [Plaintiff's] deprivation of a constitutional right." *Hinkle v. City of Clarksburg. W.Va.*, 81 F.3d 416, 421 (4th Cir. 1996) (citing *Hafner v. Brown*, 983 F.2d 570, 577 (4th Cir. 1992)). This burden is "weighty." *Penley v. McDowell Cty. Bd. of Educ.*, 876 F.3d 646, 658 (4th Cir. 2017) (internal quotation marks omitted) (quoting *Hinkle*, 81 F.3d at 421). "While they need not produce direct evidence of a meeting of the minds, [plaintiff] must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." *Hinkle*, 81 F.3d at 421. The evidence "must, at least, reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to

4906-2972-9705, v. 1

accomplish a common and unlawful plan." *Id.* "[R]ank speculation and conjecture" are not enough. *Id.* at 422. Here, Plaintiff's conspiracy allegations amount to precisely the sort of "rank speculation and conjecture" our courts deem wholly insufficient to establish a cognizable claim.

Even if Plaintiff had sufficiently pled a claim under 42 U.S.C. § 1983 for constitutional violations, the intracorporate conspiracy doctrine still dooms this claim. This doctrine, which applies to municipalities, "recognizes that a corporation cannot conspire with its agents because the agents' acts are the corporation's own." *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 352 (4th Cir. 2013); *Fox v. City of Greensboro*, 807 F.Supp. 2d 476, 499 (M.D.N.C. 2011). Specifically, "there is no unlawful conspiracy when officers within a single corporate entity consult among themselves and then adopt a policy" because two agents of the same legal entity are not considered to be "two or more separate people" forming an agreement. *Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017) (citing *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 769-771 (1984)).

To put it succinctly, "a conspiracy between a corporation and its agents, acting within the scope of employment, is a legal impossibility." *Marmott v. Md. Lumber Co.*, 807 F.2d 1180, 1184 (4th Cir. 1986) (upholding district court's ruling that plaintiff failed to allege a conspiracy because the complaint only named the company and its employees as conspirators). Plaintiff's threadbare civil conspiracy claim complains of "conspiratorial conduct" purportedly engaged in solely by Defendants, all of whom he contends are either officials or employees of the Town. (DE 1, ¶¶ 214-23).

## IX. Plaintiff is not Entitled to Declaratory or Injunctive Relief.

Finally, Plaintiff's claim for declaratory or injunctive relief fails because Plaintiff lacks Article III standing and alleges no ongoing or imminent violation of federal law. Plaintiff's

4906-2972-9705, v. 1

allegations concern discrete past employment actions that concluded with his separation from employment. (DE 1, ¶¶ 224-234). Past exposure to alleged misconduct, without a real and immediate threat of recurrence, is insufficient to support prospective equitable relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983); *see also Lancaster v. Sec'y of Navy*, 109 F.4th 283, 290 (4th Cir. 2024). "Abstract injury is not enough." *Id.* The same immediacy and reality requirements govern requests for declaratory relief. *See Preiser v. Newkirk*, 422 U.S. 395, 402, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975).

Here, Plaintiff pleads a series of discrete employment events that allegedly occurred in 2024–2025. Plaintiff does not allege that he remains employed by the Town, that any investigation is ongoing, or that Defendants are likely to take future action against him. Alleged reputational effects or continuing dissatisfaction with past employment decisions do not constitute an ongoing constitutional violation. *See Preiser v. Newkirk*, 422 U.S. 395, 402 (1975).

Because Plaintiff seeks declarations concerning completed conduct and injunctive relief untethered to any imminent injury, his claim presents no live case or controversy and should be dismissed.

## <u>CONCLUSION</u>

WHEREFORE, Defendants respectfully request that their Motion to Dismiss be GRANTED and that each of Plaintiff's claims be DISMISSED WITH PREJUDICE pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6).

This 13th day of May, 2026.

CRANFILL SUMNER LLP


BY:    /s/ *Jake W. Stewart*
Jake W. Stewart, NC Bar #51157
*Attorney for Defendants*

4906-2972-9705, v. 1

P.O. Box 30787
Charlotte, NC 28230
Telephone (704) 332-8300
Facsimile (704) 332-9994
jstewart@cshlaw.com

4906-2972-9705, v. 1

## <u>CERTIFICATION REGARDING USE OF ARTIFICIAL INTELLIGENCE</u>

Pursuant to the June 18, 2024 Standing Order of this Court In Re: Use of Artificial Intelligence, 3:24-mc-104, counsel, by signing above, submits the following certification regarding Defendant's Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's Amended Complaint.

1. No artificial intelligence was employed in doing the research for the preparation of this Memorandum, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg, as well as Google and Google Scholar;

2. Every statement and every citation to an authority contained in this Memorandum has been checked by the undersigned as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 13th day of May, 2026.

CRANFILL SUMNER LLP


BY:    /s/ *Jake W. Stewart*
Jake W. Stewart, NC Bar #51157
*Attorney for Defendants*
P.O. Box 30787
Charlotte, NC 28230
Telephone (704) 332-8300
Facsimile (704) 332-9994
jstewart@cshlaw.com

4906-2972-9705, v. 1

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that the undersigned has this day electronically filed the foregoing ***MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT*** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

C. Christopher Adkins
Adkins Law, PLLC
9620 Sherrill Estates Road
Huntersville, NC 28078
Telephone: (704) 274-5677
Facsimile: (877) 208-7577
Emails: chris@huntersvillelawyer.com
*Attorney for Plaintiff*

Christerfer R. Purkey
Rech Law, P.C.
18125 W. Catawba Avenue
Cornelius, NC 28031
Telephone: (704) 228-2790
Facsimile: (704) 909-7410
Email: cpurkey@rechlaw.com
*Attorney for Plaintiff*

This the 13th day of May, 2026.

          **CRANFILL SUMNER LLP**

BY:   /s/ *Jake W. Stewart*
       Jake W. Stewart, NC Bar #51157
       *Attorney for Defendants*
       P.O. Box 30787
       Charlotte, NC 28230
       Telephone (704) 332-8300
       Facsimile (704) 332-9994
       jstewart@cshlaw.com

4906-2972-9705, v. 1