# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### Civil Action No. 5:26-cv-00047

| | |
|---|---|
| **CHRISTOPHER LEE,** | ] |
| Plaintiff, | ] |
| | ] |
| **v.** | ] |
| | ] |
| **TOWN OF MOORESVILLE,** | ] |
| **NORTH CAROLINA;** | ] |
| **CHIEF RON CAMPURCIANI,** | ] |
| in his official and individual capacities; | ] |
| **TRACEY JEROME, in her official** | ] |
| **and individual capacities;** | ] |
| **CHRIS CARNEY, in his individual capacity;** | ] |
| **and CHRIS QUINN, in his individual capacity** | ] |
| Defendants. | ] |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'

## MOTION TO DISMISS

**NOW COMES** Plaintiff, Christopher Lee, and does hereby respond to

Defendant's Memorandum in Support of their Motion to Dismiss, and says as follows:

## INTRODUCTION

Defendants characterize this case as a routine employment dispute over an IT

Director's job performance. However, the Complaint clearly alleges constitutional

retaliation and due-process causes of action arising from Plaintiff Christopher Lee's refusal

to participate in the suppression, concealment, misclassification, restriction, manipulation,

or functional disappearance of politically damaging municipal electronic evidence

involving the sitting Mayor. (Compl. ¶¶ 4–6, 18–21, 86–110, 152–57).

On or about October 10, 2024, Town of Mooresville surveillance cameras, access-control systems, alarm sensors, and related electronic records captured the current mayor of Mooresville, Mayor Chris Carney entering Town Hall after midnight with Jaime Gatton. (Compl. ¶¶ 6, 62–70). Plaintiff, who was at the time employed as the Town's Director of Innovation and Technology and senior custodian of municipal electronic systems, viewed the footage, notified Town Manager Tracey Jerome and Town Attorney Sharon Crawford, and insisted that the footage, access-control logs, alarm records, dispatch artifacts, audit logs, metadata, retention repositories, and related ESI remain preserved, auditable, exportable, and retrievable through lawful channels. (Compl. ¶¶ 14–20, 40–43, 86–110, 152–57).

Plaintiff Lee refused to delete, alter, misclassify, conceal, overwrite, corrupt, "lose," suppress, restrict, or manipulate evidence; refused to make false statements about the existence or availability of footage; and refused to participate in any technical workaround designed to make evidence functionally unavailable while maintaining plausible deniability. (Compl. ¶¶ 20–21, 106–10, 152–57). Shortly thereafter, Defendants shifted focus from the acts of the Mayor to the Plaintiff. The Town, through actors pled throughout the Complaint began a campaign to undermine Plaintiff's authority, isolated him, escalated scrutiny, initiated a pretextual disciplinary process, issued a proposed termination, mischaracterized lawful custodial conduct as misconduct and insubordination, and forced Plaintiff from employment through a termination-threatened separation. (Compl. ¶¶ 22–25, 105, 111–37, 159–63).

The Complaint states claims under the First and Fourteenth Amendments and 42 U.S.C. § 1983. Subject-matter jurisdiction clearly because federal constitutional claims

were pled in the Complaint. Personal jurisdiction is plainly present over the North Carolina municipality defendant and North Carolina municipal official defendants sued for North Carolina conduct. Furthermore, Rule 12(b)(6) does not allow Defendants to resolve contentious factual disputes about official duties, protected speech, motive, causation, constructive discharge, publication, policymaker authority, municipal custom, conspiracy, or qualified immunity before discovery.

## STANDARD OF REVIEW

A Rule 12(b)(1) motion may not be used to convert merits arguments into jurisdictional objections. Plaintiff invokes 28 U.S.C. §§ 1331 and 1343 because this action arises under the First Amendment, the Fourteenth Amendment, and § 1983. (Compl. ¶¶ 35–38, 151–223.) Federal-question jurisdiction exists where the complaint, as it does presently, asserts claims arising under federal law, and a court should not dismiss for lack of jurisdiction merely because the defendant contends the federal claim fails on the merits. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 511–16 (2006). The Supreme Court has repeatedly cautioned against such rulings and has distinguished true limits on a court's adjudicatory power from elements of a plaintiff's substantive claim. *Id*.

The Fourth Circuit has applied the same principle in the past. Particularly, where jurisdictional facts are intertwined with the facts central to the merits of the case at hand, the course of action is for the Court to assume jurisdiction and address the challenge under the ordinary merits framework, rather than resolve disputed factual merits issues under Rule 12(b)(1). *Kerns v. United States*, 585 F.3d 187, 193–95 (4th Cir. 2009). The Supreme Court has held previously "a trial court should dismiss under Rule 12(b)(1) only when the

jurisdictional allegations are "clearly ... immaterial, made solely for the purpose of obtaining jurisdiction or where such a claim is wholly unsubstantial and frivolous."" *Id*. at 193. The arguments attack whether the Plaintiff has adequately alleged constitutional violations and entitlement to relief; those are merits issues for Rule 12(b)(6), summary judgment, or trial—not grounds to deprive this Court of subject-matter jurisdiction over federal claims pled under the First Amendment, Fourteenth Amendment, and 42 U.S.C. § 1983. Defendants' attacks on the sufficiency of those claims do not defeat the Court's power to hear them.

Rule 12(b)(2) motion likewise provides no basis for dismissal where the plaintiff has made a prima facie showing of personal jurisdiction. When a court resolves personal jurisdiction without an evidentiary hearing, the plaintiff need only make a prima facie showing, and the court must construe all relevant pleading allegations and draw all reasonable inferences in the plaintiff's favor. *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993). A heightened scrutiny standard would only apply after the parties have had a fair opportunity to develop and present the jurisdictional record. *Grayson v. Anderson*, 816 F.3d 262, 268–69 (4th Cir. 2016). See generally *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) (holding that, "where the jurisdictional facts are intertwined with the facts central to the merits of the dispute," the "better view" is to resolve such factual dispute with a hearing on the merits).

Here, the Complaint states the Town is a North Carolina municipality, the individual defendants acted through North Carolina municipal offices, Plaintiff worked in Mooresville, and the challenged conduct occurred in this District. Those allegations are

more than sufficient at the pleading stage, especially where Defendants identify no developed jurisdictional defect.

Under Rule 12(b)(6), the Court must accept the Complaint's well-pleaded factual allegations as true and draw all reasonable inferences in Plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The plausibility standard does not require Plaintiff to prove his claims, produce evidence, attach internal municipal records, or negate Defendants' anticipated defenses. Id. It requires only enough factual content to permit a reasonable inference that Defendants are liable for the alleged misconduct. *Id*. at 678. At this stage, the Court should not weigh competing disputed facts, decide motive, determine the scope of Plaintiff's actual job duties, or credit Defendants' characterization of the allegations over the Complaint's well-pleaded facts. These are material factual issues that should be resolved through discovery.

## ARGUMENT

### I. The Rule 12(b)(1) Motion Fails Because Plaintiff Pleads Federal Claims and Ongoing Redressable Injury.

Defendants' Rule 12(b)(1) argument should be rejected at the threshold because the Defendants attempt to recast factually disputed merits arguments as jurisdictional defects. Plaintiff invokes federal-question jurisdiction under 28 U.S.C. § 1331 and civil-rights jurisdiction under 28 U.S.C. § 1343 because the Complaint asserts various causes of action under the First Amendment, the Fourteenth Amendment, and 42 U.S.C. § 1983. (Compl. ¶¶ 35–38, 151–223).

This court has jurisdiction when the complaint seeks recovery directly under the Constitution or federal law, even if the Defendants were to later contend the claims fail on the merits. *Bell v. Hood*, 327 U.S. 678, 682–83 (1946). The Supreme Court has cautioned courts to distinguish true limits on adjudicatory power from elements of a plaintiff's substantive claim. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 511–16 (2006). The Fourth Circuit has held where jurisdictional facts are intertwined with the merits, disputed merits issues should not be resolved under Rule 12(b)(1)., *Kerns v. United States*, 585 F.3d 187, 193–95 (4th Cir. 2009). Defendants' arguments that Plaintiff has not adequately alleged retaliation, due process violations, stigma-plus injury, or entitlement to equitable relief are merits arguments. They do not deprive this Court of subject-matter jurisdiction.

Defendants' first jurisdictional premise—that Plaintiff alleges only past conduct— misstates the Complaint and, in any event, does not eliminate jurisdiction. Plaintiff seeks damages for completed constitutional violations, including First Amendment retaliation, deprivation of procedural due process, stigma-plus injury, forced separation, lost income and benefits, emotional distress, and reputational harm. (Compl. ¶¶ 151–223, 232). Those claims alone create a live controversy. Furthermore, even if the Court later narrowed the scope of prospective relief, the existence of damages for completed constitutional violations means a concrete dispute remains for the Court to adjudicate. Defendants' disagreement with the merits of those damages claims is not a Rule 12(b)(1) issue.

Defendants' second premise—that Plaintiff lacks standing for declaratory and/or injunctive relief because he no longer works for the Town—also fails. Plaintiff does not seek an abstract ruling based solely on dissatisfaction with a past employment decision. Plaintiff has pled continuing harm from false stigmatizing accusations concerning his

honesty, integrity, competence, trustworthiness, and fitness for public employment; ongoing maintenance of those accusations in personnel, disciplinary, investigative, termination, and separation records; foreseeable disclosure of those records through employment verification, reference checks, background investigations, public-employer hiring processes, and professional due diligence; and continuing impairment of future employment opportunities. (Compl. ¶¶ 191–200, 224–31). These allegations identify a present injury. A name-clearing hearing, correction or annotation of records, expungement or sealing where appropriate, preservation of relevant electronic evidence, and relief prohibiting further interference with Plaintiff's efforts to clear his name or obtain employment would directly redress those ongoing injuries. (Compl. ¶ 231).

Defendants' reliance on *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983), is misplaced. *Lyons* involved a plaintiff who sought prospective relief based on the speculative possibility that police would again subject him to the same physical restraint in the future. Plaintiff's requested relief is different than the relief requested in *Lyons*. Plaintiff has pled that Defendants continue to maintain false stigmatizing records and that the records are likely to be accessed or disclosed in the ordinary course of future employment-related processes. (Compl. ¶¶ 195–99, 231). The injury is not a speculative repeat encounter; it is the present and continuing effect of false government records, coupled with the denial of a name-clearing process and ongoing reputational impairment. That is a present controversy.

Defendants' third premise—that declaratory relief is unavailable because it would address completed conduct—also goes to remedy, not jurisdiction over the action. Plaintiff seeks a declaration that Defendants' policies, practices, and actions violated his

constitutional rights, and that declaration is tied to a concrete relief: a name-clearing hearing, correction or annotation of records, preservation of evidence, and protection against further retaliation or interference with employment opportunities. (Compl. ¶¶ 224–31). The requested declaration would resolve an actual dispute concerning the legality of Defendants' continuing maintenance and use of stigmatizing records and the ongoing consequences of the alleged constitutional violations.

Finally, Defendants' Rule 12(b)(1) motion improperly asks the Court to resolve disputed factual issues in Defendants' favor. Whether Defendants' records are stigmatizing, whether they are likely to be disclosed, whether Plaintiff was forced from employment, whether Defendants denied a meaningful name-clearing process, and whether equitable relief is ultimately warranted are merits and remedial questions. At the pleading stage, Plaintiff's allegations of ongoing reputation, employment, and records-based harm must be accepted as true. Because the Complaint pleads federal constitutional claims, seeks damages for completed violations, and alleges ongoing injuries redressable by prospective relief, Defendants' Rule 12(b)(1) motion should be denied.

## II. The Rule 12(b)(2) Motion Is Undeveloped and Meritless.

Defendants' Rule 12(b)(2) motion should be denied because it is not actually developed. Although Defendants cite Rule 12(b)(2) and recite the general personal-jurisdiction standard, they do not identify any named Defendant who lacks contact with North Carolina. They do not identify any Defendant who was not acting in North Carolina, or any jurisdictional fact that would make this Court's exercise of personal jurisdiction improper. Rule 12(b)(2) challenge provides no basis for dismissal in the present case.

Unless the Court holds an evidentiary hearing or the parties have had a fair opportunity to develop a jurisdictional record, when personal jurisdiction is decided on the pleadings and written submissions, the Court must construe all relevant allegations and draw all reasonable inferences in Plaintiff's favor. *Mylan Labs., Inc. v. Akzo*, N.V., 2 F.3d 56, 60 (4th Cir. 1993). "In deciding whether the plaintiff has proved a prima facie case of personal jurisdiction, the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Id*.

The Fourth Circuit's preponderance standard applies only where the parties have had a fair opportunity to present evidence, and the court resolves disputed jurisdictional facts on a developed record. *Grayson v. Anderson*, 816 F.3d 262, 268–69 (4th Cir. 2016). "For example, when the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a prima facie showing of personal jurisdiction to survive the jurisdictional challenge." *Id*. at 268. Defendants have not requested, developed, or supported any evidentiary record showing lack of personal jurisdiction. The Complaint's allegations are therefore sufficient under the standards set forth in *Mylan* and *Grayson*.

The Complaint establishes personal jurisdiction as the Town is a North Carolina municipal corporation. (Compl. ¶ 42). Tracey Jerome is the Town Manager of Mooresville, acting through her North Carolina municipal office. (Compl. ¶ 46). Chris Carney is the Mayor of Mooresville. (Compl. ¶ 47). Ron Campurciani is the Chief of Police and Assistant Town Manager for Mooresville. (Compl. ¶ 48). Chris Quinn is a senior Town official with executive authority over municipal finance and budgetary operations. (Compl. ¶ 49).

Plaintiff worked for the Town in Mooresville, North Carolina, and the events giving rise to the claims occurred in Iredell County within the Western District of North Carolina. (Compl. ¶¶ 34, 40–41). These allegations show that Defendants' forum contacts are the very conduct, giving rise to Plaintiff's claims.

Plaintiff's claims arise directly from Defendants' North Carolina conduct. The Complaint shows that North Carolina municipal officials acting under color of North Carolina municipal authority participated in, directed, approved, ratified, or implemented actions involving the preservation and handling of Town electronic records, the characterization of a Town Hall security incident, the discipline and termination-threatened forced separation of a Town employee, the maintenance of Town personnel and separation records, and the denial of a name-clearing process. (Compl. ¶¶ 46–49, 73–80, 98–110, 111–37, 151–223). Those acts allegedly occurred through Town offices and municipal authority in North Carolina. Exercising jurisdiction over Defendants in this District is therefore consistent with due process and basic fairness.

Nor is there any plausible personal-jurisdiction objection to the Town itself. A North Carolina municipality cannot credibly claim that a federal court sitting in North Carolina lacks personal jurisdiction over it for claims arising from its own municipal policies, customs, employment actions, records practices, and officials' conduct in North Carolina. Likewise, the individual defendants are alleged to have acted from and through North Carolina municipal offices, in connection with North Carolina municipal employment, concerning North Carolina municipal records, and against a North Carolina municipal employee. These are forum contacts.

Defendants' Rule 12(b)(2) argument also fails because it conflates personal jurisdiction with the merits. To the extent Defendants argue that Carney, Campurciani, or Quinn did not personally participate in the constitutional violations against Plaintiff, that is not a personal-jurisdiction argument. The argument is more akin to a Rule 12(b)(6) merits argument about whether the Complaint sufficiently pleads individual liability. Personal jurisdiction asks whether the Court has authority over the defendants based on their forum contacts; it does not ask whether Plaintiff will ultimately prove or prevail each defendant's liability. As the Complaint states that each defendant acted through North Carolina municipal authority in connection with the events at issue occurring in North Carolina, Rule 12(b)(2) provides no basis for dismissal.

### III. Official-Capacity Claims Should Not Be Dismissed With Prejudice to the Extent They Support Prospective Relief.

Defendants first argue that the official-capacity claims against Jerome and Campurciani are redundant because the Town is named as a defendant. Plaintiff recognizes the general rule that an official-capacity damages claim is treated as a claim against the governmental entity. *Kentucky v. Graham*, 473 U.S. 159, 165–67 (1985). However, that principle does not justify the relief Defendants seek: dismissal with prejudice of all official-capacity claims regardless of remedy. Official-capacity claims are not personal-liability claims; they are a procedural vehicle for obtaining relief from the governmental office or entity, especially where implementation of prospective relief may require action by officials with present authority over records, hearings, evidence preservation, and compliance. *Graham*, 473 U.S. at 167 (distinguishing official-capacity actions seeking prospective relief); see also *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)

(recognizing that state officials sued in their official capacities for injunctive relief are treated differently because official-capacity actions for prospective relief are not treated as actions against the State for damages).

That distinction matters here as Plaintiff seeks prospective equitable relief requiring action by officials who control or can implement a name-clearing hearing, correction or annotation of personnel and separation records, preservation of municipal surveillance footage and related ESI, and compliance with any injunction. (Compl. ¶¶ 224–31). Those requested remedies are forward-looking and operational. However, should the Court ultimately treat official-capacity damages claims as duplicative of the claims against the Town, dismissal with prejudice of official-capacity claims in their entirety would be overbroad because it could unnecessarily complicate the implementation of prospective relief. Federal law has long permitted official-capacity suits for prospective relief against officials who have responsibility for enforcing or implementing challenged governmental conduct. *Ex parte Young*, 209 U.S. 123, 159–60 (1908).

Based upon the foregoing rulings from our United States Supreme Court, the proper course is not dismissal with prejudice. Should the Court conclude that official-capacity damages claims are redundant, it should either treat those claims as claims against the Town or dismiss only the redundant damages component without prejudice to Plaintiff's requests for prospective relief. That narrower approach preserves the distinction between duplicative damages liability and the practical need for officials with present authority to carry out equitable remedies such as a name-clearing hearing, record correction, evidence preservation, and compliance with any injunction. Defendants' request for dismissal with prejudice should therefore be denied.

**IV. Plaintiff Adequately Pleads Individual-Capacity Claims Against Carney, Campurciani, and Quinn.**

Defendants argue the Complaint lacks personal-involvement allegations against Mayor Carney, Chief Campurciani, and Chris Quinn. That argument ignores the pleaded facts and the reasonable inferences owed to Plaintiff at this stage. Per the Complaint, Carney was the subject of politically sensitive footage, had a personal interest in avoiding scrutiny of the after-hours Town Hall incident, and used his influence directly or through subordinates to affect the Town's response and retaliate against employees with knowledge of or control over the evidence, including Plaintiff. (Compl. ¶ 47). These allegations are not abstract labels; Carney's motive and influence to the same evidence-preservation dispute that allegedly triggered retaliation are linked. Whether discovery proves Carney's communications, influence, or participation is a factual issue best resolved for later summary judgment.

The Complaint states that Campurciani, as Chief of Police and Assistant Town Manager, possessed authority over internal investigations and incident characterization, reviewed and discussed the electronic records, participated in and/or ratified decisions to minimize the Mayor-related incident, restricted inquiry and access to records, and supported actions targeting custodians of the evidence. (Compl. ¶¶ 48, 73–80, 207). Those allegations plausibly connect Campurciani to the suppression-and-retaliation theory.

The Complaint states that Quinn participated in senior-leadership decision-making affecting finance, contracting, outside consultants, resources, and technology vendors, possessed knowledge of politically sensitive matters affecting Town leadership, and

participated in and approved, or ratified actions designed to protect senior officials and marginalize employees whose roles threatened to expose damaging evidence. (Compl. ¶ 49). At the pleading stage, those allegations plausibly allege participation and ratification in a coordinated municipal response.

Rule 8 requires fair notice and plausibility, not discovery-level proof. A complaint need not plead "detailed factual allegations" or establish a prima facie case at the pleading stage; it need only contain enough factual matter to permit a reasonable inference that each defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). The Court must accept well-pleaded factual allegations as true and draw reasonable inferences in Plaintiff's favor. *King*, 825 F.3d at 212. Defendants' demand for proof of every meeting, communication, directive, or internal decision improperly misstates the burden Plaintiff has to satisfy at the pleadings stage. If Defendant's contentions were to have merit, every plaintiff would be required to plead the evidence before discovery, including facts uniquely within Defendants' possession. Again, such factual disputes are better suited for latter summary judgment after discovery has been conducted.

The Complaint satisfies Rule 8 and survives 12(b)(6) scrutiny because it identifies each challenged defendant's role, motive, authority, and alleged participation or ratification in the retaliatory course of conduct. Defendant Jerome exercised top-level administrative authority and final decision-making influence over discipline and politically sensitive matters, and to have participated in, directed, approved, or ratified the targeting, investigation, and termination of Plaintiff. (Compl. ¶ 46). Defendant Carney held a

personal interest in avoiding scrutiny of the Mayor-related incident and to have used influence to affect the Town's response and retaliation against employees with knowledge or control of the evidence. (Compl. ¶ 47). Campurciani held investigative and incident-characterization authority and participated in or ratified decisions to minimize the incident, restrict inquiry and access, and support actions targeting evidence custodians. (Compl. ¶ 48). Quinn participated in senior-leadership decision-making and approved or ratified actions designed to protect senior officials and marginalize employees whose roles threatened to expose damaging evidence. (Compl. ¶ 49). The Complaint provides more than fair notice of who is alleged to have done what, why, and through what authority. That is enough to proceed beyond Rule 12 and Rule 8 scrutiny.

### V. Plaintiff States a First Amendment Retaliation Claim.

A public employee states a First Amendment retaliation claim by plausibly alleging protected speech or expressive conduct as a citizen on a matter of public concern, adverse action sufficient to deter a person of ordinary firmness, and causation. *Lane v. Franks*, 573 U.S. 228, 237–40 (2014); *Hunter v. Town of Mocksville*, 789 F.3d 389, 396–403 (4th Cir. 2015); *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 316–18 (4th Cir. 2006); *Andrew v. Clark*, 561 F.3d 261, 267–69 (4th Cir. 2009).

**A. Plaintiff's speech, disclosures, and refusals addressed matters of public concern.**

Defendants phrase Plaintiff's allegations in the Complaint as Plaintiff merely insisted on performing his job according to Town policy. Plaintiff's Complaint does far more than that. The Complaint alleges speech and refusals concerning government integrity, public-records preservation, evidence integrity, attempted suppression of

surveillance footage and related security records, the Mayor's after-hours presence in a secured municipal building, and administrative retaliation against the evidence custodian. (Compl. ¶¶ 6, 14–21, 62–70, 86–110, 152–57). Those are matters of public concern.

The Fourth Circuit protects public-employee speech exposing official misconduct, corruption, public safety issues, and governmental integrity concerns. *Hunter*, 789 F.3d at 396–403; *Andrew*, 561 F.3d at 267–69; and *Love-Lane v. Martin*, 355 F.3d 766, 776–78 (4th Cir. 2004). Plaintiff's allegations concern whether a municipality preserved or suppressed evidence implicating its Mayor. That is speech having a genuine public-concern.

**B. Garcetti does not bar the claim at the pleading stage.**

Defendants' principal argument is that Plaintiff's conduct fell within his job duties because he was responsible for electronic-record preservation. That argument overreads *Garcetti v. Ceballos*, 547 U.S. 410, 421–22 (2006) and ignores later precedent. The critical question is not whether speech concerned information learned through employment, but whether the speech itself was ordinarily within the employee's duties. *Lane*, 573 U.S. at 239–40. The Fourth Circuit treats that inquiry as practical and context specific. *Crouse v. Town of Moncks Corner*, 848 F.3d 576, 583–88 (4th Cir. 2017).

The Complaint plausibly claims that refusing to participate in evidence suppression, refusing to make false statements, objecting to concealment of evidence, and refusing technical workarounds designed to defeat lawful production were not ordinary job-performance tasks. (Compl. ¶¶ 20–21, 106–10, 152–57). Plaintiff's position may have required lawful administration of records; however, it did not require him to misuse that

position to suppress evidence or facilitate false narratives to prevent a government scandal. Defendants' argument collapses the difference between performing lawful custodial duties and refusing to weaponize those duties for concealment to prevent a government scandal.

**C. Plaintiff pleads specific protected conduct.**

Defendants contend Plaintiff does not identify specific speech and was never directly ordered to "delete" or "conceal" evidence. Rule 8 requires neither verbatim meeting transcripts nor magic words; it requires fair notice and factual content supporting a reasonable inference of liability. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). Furthermore, the liberal Rule 8 pleading standard is not meant to be a rigid pleading test for discrimination cases before discovery can be conducted. *Swierkiewicz*, 534 U.S. at 512.

Plaintiff identifies the records at issue—CCTV footage, access-control logs, alarm records, dispatch artifacts, audit logs, metadata, retention repositories, and related ESI information. (Compl. ¶¶ 14–20, 86–110, 152–57). Plaintiff further identified the conduct at question involving the protection of conduct of notifying Town leadership and counsel, insisting on preservation and exportability, objecting to concealment, refusing deletion or alteration, refusing misclassification, refusing suppression or restriction, refusing false statements, and refusing technical workarounds designed to frustrate lawful production.

Pressure to suppress evidence may be alleged through circumstantial facts, including efforts to control access, avoid auditability, restrict exportability, treat records

outside ordinary production channels, and retaliate when the custodian refuses. (Compl. ¶¶ 98–110, 158–63). The Complaint pleads those facts.

**D. Plaintiff pleads adverse action and constructive discharge.**

Defendants apply the adverse-action standard far too narrowly. In First Amendment retaliation cases, the question is whether the challenged conduct would deter a person of ordinary firmness from exercising such protected rights. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005); *Ridpath*, 447 F.3d at 318.

Plaintiff alleges heightened scrutiny, exclusion from information and personnel necessary to perform his daily job functions, unilateral reduction of authority, pretextual investigation, discipline, stigmatizing accusations, a Notice of Proposed Termination, and termination-threatened forced separation. (Compl. ¶¶ 22–25, 105, 111–37, 159–63, 191–99). These allegations readily satisfy the ordinary-firmness standard as described above. Defendants' contention that Plaintiff was not formally terminated is also contrary to the Complaint, which alleges termination and/or constructive separation through a termination-threatened process. (Compl. ¶¶ 159, 197). Voluntariness is a factual issue to be resolved via discovery and summary judgment, if applicable.

**E. Plaintiff pleads causation.**

Plaintiff alleges that after resisting improper pressure and insisting on lawful preservation of evidence pertaining to the government scandal, Defendants shifted attention from the Mayor, to the evidence custodian, escalated scrutiny, initiated pretextual discipline, and characterized lawful custodial conduct as misconduct. (Compl. ¶¶ 21–25, 105, 111–37, 158–63). Plaintiff alleges temporal proximity, deviations from ordinary

employment practices, targeted disciplinary process, and false or misleading reasons for discipline. (Compl. ¶¶ 160–61, 168–88). These allegations plead protected activity was a substantial or motivating factor in Defendants' actions.

## VI. Plaintiff States a Fourteenth Amendment Property-Interest Due-Process Claim, or at Minimum Should Receive Leave to Amend.

Defendants site and rely upon North Carolina's at-will presumption, however, property interests may arise from statutes, ordinances, policies, practices, and mutually explicit understandings that create a legitimate claim of entitlement. *Board. of Regents v. Roth*, 408 U.S. 564, 577 (1972); *Perry v. Sindermann*, 408 U.S. 593, 601–03 (1972). When such interests exists as they do here, due process requires notice of the charges, an explanation of the evidence, and an opportunity to respond. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542–46 (1985).

Plaintiff has pled his property interest arose from Town personnel policies, established Town practices, representations, and procedures indicating he would not be terminated except for cause and pursuant to prescribed disciplinary procedures. (Compl. ¶¶ 155–56, 166–89). It alleges that Defendants used a proposed-termination process, concealed the true basis for discipline, relied on pretextual charges, denied a meaningful opportunity to respond, ignored exculpatory technical context, and proceeded through biased or predetermined decisionmakers. (Compl. ¶¶ 168–88). Those allegations plausibly state a due-process claim.

Defendants' contrary argument depends on Town documents not before the Court: personnel policies, whistleblower policy, disciplinary rules, grievance procedures, notices,

delegations of authority, and termination records. If those documents show at-will status, Defendants may raise that argument on a proper record. At Rule 12, Plaintiff's allegations must be accepted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). If the Court concludes more policy detail is necessary, Plaintiff requests leave to amend under Fed. R. Civ. P. 15.

### VII. Plaintiff States a Stigma-Plus Liberty-Interest Claim.

A stigma-plus claim requires allegations that stigmatizing charges placed a stigma on the plaintiff's reputation, were made public by the employer, were made in conjunction with termination or demotion, and were false. *Sciolino v. City of Newport News*, 480 F.3d 642, 646 (4th Cir. 2007). Plaintiff pleads each element throughout his Complaint.

The Complaint alleges false and stigmatizing accusations that Plaintiff engaged in misconduct, acted unlawfully or unethically, misused administrator credentials, exceeded authority, violated Town policy or security protocols, obstructed management, was insubordinate, could not be trusted with custodial responsibility, and was professionally unfit to continue serving as Director of Innovation and Technology. (Compl. ¶¶ 191–94). Of importance, these allegations only arouse after the Plaintiff discovered the government scandal involving the Mayor. *Id*. These allegations attack honesty, integrity, trustworthiness, and professional fitness in a role requiring public confidence and responsibility for municipal security systems and digital evidence. They go beyond ordinary job-performance criticism.

Defendants' publication argument misstates *Sciolino*. Plaintiff need not allege that a named future employer has already obtained stigmatizing records, but may plead likely disclosure. *Sciolino*, 480 F.3d at 649–50. The Complaint pleads the accusations were

communicated beyond legitimate need-to-know and placed or maintained in personnel, disciplinary, investigative, termination, and separation records likely to be accessed or disclosed in employment verification, reference checks, background investigations, public-employer hiring processes, and professional due diligence. (Compl. ¶¶ 195–99).

Defendants' reliance on Plaintiff's alleged resignation also fails. The Complaint alleges termination and/or forced separation through a termination-threatened process. (Compl. ¶¶ 159, 197). Whether the separation was voluntary cannot be resolved on the pleadings.

## VIII. Qualified Immunity Cannot Be Resolved in Defendants' Favor on the Pleadings.

Qualified immunity protects officials only when the complaint fails to allege a constitutional violation or when the right was not clearly established. *Pearson v. Callahan*, 555 U.S. 223, 231–36 (2009); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The defense is not properly resolved on a motion to dismiss where it turns on disputed facts, motive, actual job duties, personal participation, or the reasonableness of conduct. Again, the allegations of Plaintiff's Complaint must be taken as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

The First Amendment right at issue is clearly established. A public employer may not retaliate against an employee for citizen speech on matters of public concern, including speech exposing official misconduct, corruption, or governmental integrity concerns. *Lane*, 573 U.S. at 237–40; and *Hunter*, 789 F.3d at 396–403. It was also clearly established that retaliation sufficiently deters a person of ordinary firmness violates the First Amendment.

*Constantine*, 411 F.3d at 500; *Ridpath*, 447 F.3d at 318. The due-process rights were also clearly established. A public employee with a protected property interest is entitled to adequate pre-deprivation process. *Loudermill*, 470 U.S. at 542–46. A public employee subjected to false, stigmatizing charges in connection with termination is entitled to a meaningful opportunity to clear his name where publication or likely disclosure is alleged. *Sciolino*, 480 F.3d at 649–50; *Ridpath*, 447 F.3d at 307–14.

Defendants define the right too narrowly as a right to avoid discipline for insisting on compliance with municipal policy. The Complaint alleges retaliation for refusing to suppress evidence, refusing to make false statements, and speaking or objecting about governmental integrity and public-record preservation. (Compl. ¶¶ 20–21, 106–10, 152–63). Existing precedent gave reasonable officials fair warning that such retaliation and denial of name-clearing process would violate federal rights.

### IX. Plaintiff Plausibly Pleads Municipal Liability Under Monell.

A municipality is liable under § 1983 when an official policy, custom, final policymaker decision, ratification, or deliberately indifferent failure to train or supervise is the moving force behind a constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–94 (1978); and *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–84 (1986).

The Complaint alleges more than a single act, but a custom or practice in which the Town treated politically damaging electronic evidence as a political scandal risk to be contained rather than a public record to be neutrally preserved; centralized control over sensitive footage, access-control records, alarm data, and audit trails; minimized leadership-implicating incidents as "false alarms" or administrative issues; and retaliated

against IT personnel, records custodians, and employees who insisted on evidentiary integrity. (Compl. ¶¶ 202–04). The Complaint identifies Plaintiff, Jeffrey Noble, and Frank Falzone as employees allegedly targeted after raising, possessing, or refusing to suppress evidence-integrity concerns concerning the Mayor-related incident and politically sensitive records. (Compl. ¶¶ 26–30, 138–50, 204). That is enough at the pleading stage.

Defendants also challenge final-policymaker allegations. A municipality may be liable for a single decision by an official with final policymaking authority in the relevant area. *Pembaur*, 475 U.S. at 480–84. Plaintiff alleges that the Town Manager and Chief of Police possessed final authority or final decision-making control over discipline, termination, incident characterization, investigative routing, and evidence-handling governance, and that they personally participated in, directed, approved, or ratified the actions taken against Plaintiff. (Compl. ¶¶ 46, 48, 205–08). The Town charter, ordinances, personnel policies, delegations of authority, and ratification evidence are not before the Court. Plaintiff's allegations plausibly plead policymaker action and ratification.

Finally, Plaintiff pleads deliberate indifference in training, supervision, and discipline concerning constitutional retaliation, electronic-record preservation, neutral evidence custodianship, and politically sensitive evidence handling. (Compl. ¶¶ 209–12). Given the Town's reliance on digital surveillance systems, access-control infrastructure, alarm monitoring, and audit logs for public safety, accountability, and governance, the need for training and supervision was plausibly obvious. (Compl. ¶ 210). Whether the evidence ultimately proves custom, ratification, policymaker action, or deliberate indifference is not a Rule 12 issue.

## X. Plaintiff States a § 1983 Civil Conspiracy Claim.

A § 1983 conspiracy claim requires allegations that defendants acted jointly in concert, that at least one overt act was done in furtherance of the conspiracy, and that the act resulted in deprivation of a constitutional right. *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). Plaintiff has pled a shared objective amongst Defendants, agreement, overt acts, and constitutional injury. (Compl. ¶¶ 214–23).

The alleged objective was to protect Town leadership from a local political scandal, avoid political fallout, control sensitive digital evidence, prevent an auditable trail, and remove Plaintiff because his custodial role and protected refusals threatened concealment. (Compl. ¶¶ 215–17). The overt acts include minimizing the Mayor-related incident, restricting inquiry and access, pressuring Plaintiff to treat records differently from standard evidence channels, isolating Plaintiff, stripping authority, initiating pretextual discipline, mischaracterizing lawful custodial conduct as misconduct, circulating stigmatizing accusations, and forcing Plaintiff from employment. (Compl. ¶ 218).

Defendants' intracorporate-conspiracy argument is premature. The doctrine generally presumes agents acting within the scope of lawful duties and for the entity's legitimate interests. *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 352–53 (4th Cir. 2013); *Ziglar v. Abbasi*, 582 U.S. 120, 153–54 (2017). Plaintiff alleges the opposite: a politically motivated course of conduct outside legitimate municipal purposes to suppress evidence and retaliate against the evidence custodian. (Compl. ¶¶ 214–23). Whether Defendants acted within the lawful scope of municipal authority and for legitimate Town interests is factual and should not be decided on the pleadings.

## XI. Declaratory and Injunctive Relief Remain Available.

Plaintiff seeks a declaration of constitutional violations and injunctive relief including a name-clearing hearing, correction or annotation of false records, preservation of surveillance footage and related ESI, and protection against further retaliation or interference with employment opportunities. (Compl. ¶¶ 224–31). These remedies address present and future consequences of the alleged violations, including ongoing reputational harm and maintained stigmatizing records. (Compl. ¶¶ 195–200, 231). Defendants' remedial objections cannot support dismissal under Rule 12.

## XII. If the Court Identifies Any Pleading Defect, Leave to Amend Should Be Granted.

Dismissal with prejudice would be improper. No discovery has occurred, and many issues raised by Defendants depend on information in their possession. If the Court finds any allegation insufficient, Plaintiff respectfully requests leave to amend under Fed. R. Civ. P. 15.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss in its entirety. In the alternative, Plaintiff requests that any dismissal be without prejudice and that Plaintiff be granted leave to amend.

Respectfully submitted this the 27th day of May, 2026.

/s C. Christopher Adkins
N.C. Bar No. 46950
Adkins Law, PLLC

9620 Sherrill Estates Road
Huntersville, North Carolina  28078
Phone: (704) 274-5677
Fax: (877) 208-7577
chris@huntersvillelawyer.com

# CERTIFICATION REGARDING ARTIFICIAL INTELLIGENCE

The undersigned submits that the foregoing **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**, was not:

1.　　No artificial intelligence was employed in doing the research for the preparation of this Memorandum, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg, as well as Google and Google Scholar;

2.　Every statement and every citation to an authority contained in this Memorandum has been checked by the undersigned as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 27th, May, 2026.

> /s C. Christopher Adkins
> N.C. Bar No. 46950
> Adkins Law, PLLC
> 9620 Sherrill Estates Road
> Huntersville, North Carolina 28078
> Phone: (704) 274-5677
> Fax: (877) 208-7577
> chris@huntersvillelawyer.com

**CERTIFICATE OF SERVICE**

This is to certify that the undersigned has this day electronically filed the foregoing **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Jake W. Stewart,
NC Bar #51157
Attorney for Defendants
P.O. Box 30787
Charlotte, NC 28230
Telephone (704) 332-8300
Facsimile (704) 332-9994
jstewart@cshlaw.com

This the 27th day of May, 2026.

/s C. Christopher Adkins
N.C. Bar No. 46950
Adkins Law, PLLC
9620 Sherrill Estates Road
Huntersville, North Carolina 28078
Phone: (704) 274-5677
Fax: (877) 208-7577
chris@huntersvillelawyer.com